McMILLAN, Judge.
The appellant was convicted of the unlawful possession of cocaine, in violation of § 13A-12-212, Code of Alabama 1975. He was sentenced to 10 years in the state penitentiary.
I
The appellant argues that the State failed to provide sufficient evidence to sustain his conviction of the possession of cocaine. However, the record indicates that the appellant filed a motion to exclude the State’s evidence, arguing only that the State’s evidence had been obtained as a result of an illegal search and seizure. The appellant never argued or stated that the State’s evidence was insufficient to sustain the conviction. Therefore, this issue is not preserved for review.
“ ‘To preserve the issue for appeal, it is necessary for defendant to state his grounds upon moving to exclude evidence; however, it is not necessary to draw the trial court’s attention to the particular defect. It is sufficient that the defendant state the ground that the prosecution has failed to make a prima facie case. Turner v. State, 266 Ala. 250, 96 So.2d 303 (1957); see also, R. Williams, Williams’ Alabama Evidence § 308 (1967).’ ”
Sankey v. State, 568 So.2d 366 (Ala.Cr. App.1990), quoting Ex parte Maxwell, 439 So.2d 715, 717 (Ala.1983). See also Fortier v. State, 515 So.2d 101, 104 (Ala.Cr.App. 1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 776, 98 L.Ed.2d 862 (1988).
“In order to preserve the issue of the sufficiency of the evidence for review, the motion for judgment of acquittal should state ‘the grounds therefor.’ Rule 12, Alabama Rules of Criminal Procedure (Temp.). ‘It is well settled in Alabama that a motion to exclude evidence which does not state the grounds on which the motion is based is properly overruled.’ Ex parte Maxwell, 439 So.2d 715, 717 (Ala.1983).”
Cannon v. State, 518 So.2d 872, 873 (Ala. Cr.App.1987).
*10 Therefore, this matter is not preserved for our review.
II
The appellant argues that the seizure of bullets from his front pockets constituted an illegal search and seizure; however, this matter is not preserved for our review. The testimony concerning the bullets was entered without an objection on Fourth Amendment grounds. Moreover, the appellant failed to make any motion for a suppression hearing on the seized bullets. At the close of the State’s case, the appellant made a motion to exclude the State’s evidence, on the ground that the cocaine that was seized from the taxi cab, in which the appellant was apprehended, was acquired as the result of an illegal search and seizure. Thus, the appellant failed to object to the State’s introduction of the bullets, which were seized from the appellant’s pockets, on this ground. Thus, this matter is not preserved for review. Benge v. State, 551 So.2d 430, 432 (Ala.Cr.App.1989); Thomas v. State, 447 So.2d 203 (Ala.Cr. App.1984).
III
The appellant argues that the search of the taxi cab, in which he was a passenger, was unconstitutional. In the present case, two packets of cocaine were found underneath the back seat of the taxi cab. The appellant does not claim any pos-sessory interest in the vehicle nor does he assert that he had any expectation of privacy. Moreover, the appellant testified at trial that he had no knowledge of the cocaine and that the cocaine was not his.
In Rakas v. Illinois, 439 U.S. 128, 148-49, 99 S.Ct. 421, 432-33, 58 L.Ed.2d 387 (1978), the United States Supreme Court held that the petitioners did not have standing to challenge the search of a vehicle in which the petitioners were passengers and the subsequent seizure of a box of rifle shells from in the glove compartment and a sawed-off rifle from under the front passenger seat. The Court stated that the petitioners “made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers,” and that “[l]ike the trunk of an automobile, these are areas in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy.” Id.
Thus, in German v. State, 492 So.2d 622, 624 (Ala.Cr.App.1985), this Court noted that “the appellant made no assertion of a property or possessory interest in the vehicle or property seized,” and stated that she “simply failed to establish her standing to challenge the search and seizure.”
The appellant in the present case does not have standing to object to the search of the taxi cab.
IV
The appellant argues that the trial court erred by allowing Investigator Sharon Howard to give hearsay testimony which was allegedly irrelevant, immaterial, and extremely prejudicial to the appellant. The appellant also argues that his rights to a fair trial were violated by her testimony.
The record indicates that during the cross-examination by defense counsel of State’s witness Investigator Sharon Howard, the following transpired:
“Q Did you have probable cause to believe that a felony had been committed at that time?
“A Yes, sir, we did.
“Q What felony?
“A Possession.
“Q Of what?
“A Cocaine.
“Q What gave you the right to believe that at that time, ma’am?
“A Because for nine months I worked—
“Q I am just asking you about this specific instance.
“[Prosecutor]: Your Honor, he asked the question. I ask that she be able to answer the question.
“THE COURT: You asked the question, [defense counsel]. I will let her answer it.
*11 “Go ahead.
“A For nine months I worked under cover. The majority of my cases were made in that same alley. I made 116 cases and in just about all my cases I bought little packets just like that. All those—
“[Defense counsel]: Objection, Your Honor. She’s putting into evidence that she’s talking about some packets in other cases.
“THE COURT: You asked the question, [defense counsel].
“Go ahead, ma’am.
“A All the packets that I purchased I purchased in that same alley. . That particular night there was more than usual traffic going in and out. We observed the cars going in and the people on foot going to the cars, and then the cars would leave out, more so than usual.
“Okay. One of the officers decided to get a little bit closer in the alley to see actually what was going on.
“[Defense counsel]: I will object to that portion of it, Your Honor, what one of the officers decided.
“THE COURT: Overruled.
“Go ahead, ma’am.
“A Okay. When he was in the alley that’s when he observed the white male walk in. Of course, at this time we didn’t know it was Michael. He saw the black male approach him. They were in the dark, so they lit a lighter, and this is what they usually do. It’s the same practice.
“[Defense counsel]: We object to all this, Your Honor. It’s not responsive to the question asked to begin with. She would have had to hear that by hearsay because when she testified earlier she said she saw him coming out of the alley.
“THE COURT: [Defense counsel], you' asked her the question.
“[Defense counsel]: I didn’t ask her that question, sir.
“THE COURT: You asked her what was probable cause that she had and I think she is explaining it to you.
“Go ahead, ma’am.
“A Okay. They usually light a light at nighttime so the other person can see what he is buying, to see, you know, if he is actually getting powder. This is what happened that night. This is what one of our investigators observed. Okay. He observed two packets, two yellow packets. When he identified himself everybody broke and run. If they weren’t doing anything they would not have broke running. That’s probable cause right there.
“Okay. We caught both persons. We patted one down. The black guy even said, ‘I’m not the one with drugs. He’s got the drugs on him. If you catch him, you’ve got the drugs.’ We caught him. I actually saw him running from the alley as Investigator Derting was on his A unit talking to us. He said, ‘They broke running. One is going across Seminole. I need some units to catch them going across Seminole.’ We saw him as he was running from that alley going through the building. We went right around the corner to the stop sign and I saw him jump into the back seat and shut that taxi door. I even saw the brakes come on the taxi like maybe he was getting ready to leave. That’s why we got over there as quick as we could and pulled up and stopped.
“We felt like we had probable cause to believe that a felony was about to be committed in the alley, a drug transaction.
“Q Are you through, ma’am?
“A Yes, sir.
“Q You didn’t know all of this at that time, though, did you?
“A Yes, sir.
“Q You saw the light over there?
“A No, but—
“Q You heard that later, didn’t you?
“A No, sir, we heard it while it was going on. Investigator Derting had an A unit and we had radios in all of our cars. We had constant communication with him.
“Q He said over the radio that they were using a light to examine this evidence?
*12 “A Would you like me to tell you everything he said?
“Q Just answer my question, please, ma’am.
“A Yes, he did.
“Q The judge has let you go for—
“A Yes, sir, he did.
“Q And it was on that basis that you made your conclusion that a crime had been committed that caused you to believe — you felt a felony had been committed and it was on that basis that you searched the cab?
“A Yes, sir.”
The testimony to which the appellant objects was elicited by defense counsel’s broad question concerning what probable cause the police had for the arrest. “Thus, he opened the door to the officer’s statement and invited the error. Holmes v. State, 505 So.2d 1308, 1310-11 (Ala.Cr.App. 1987).” Sandifer v. State, 535 So.2d 203, 206 (Ala.Cr.App.1987). Thus, the trial court did err by allowing the witness’s testimony.
V
The appellant argues that his rights to due process were violated by prejudicial remarks the prosecutor made during his closing argument. The following transpired during the closing argument of the prosecutor:
“[Prosecutor]: Mention was made of the fact that the cocaine, or that evidence which has been identified by the State toxicologist as cocaine, remained in the exclusive possession of Investigator Ron Derting for 16 days. I am not concerned about that, and I hope you will not be concerned about that. If His Honor had been concerned with it, it would not have been admitted into evidence.
“[Defense counsel]: We object to that, Your Honor, that had His Honor been concerned with the fact that the cocaine had been—
“THE COURT: Don’t worry about what I’m concerned with. You all just try to figure out what the facts are.”
This matter is not preserved for review, because there was no adverse ruling by the trial court. Leonard v. State, 551 So.2d 1143 (Ala.Cr.App.1989); Johnson v. State, 542 So.2d 341 (Ala.Cr.App.1989); Britain v. State, 533 So.2d 684 (Ala.Cr.App. 1988). Moreover, the trial court’s instructions to the jury cured the error. See Hammonds v. State, 549 So.2d 993 (Ala.Cr.App.1989) (in which a prosecutor’s comment concerning the defendant’s failure to testify was cured by prompt instructions of the trial court); Lynn v. State, 543 So.2d 704, 707 (Ala.Cr.App.1987), affirmed, 543 So.2d 709 (Ala.1988), cert. denied, — U.S.-, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989) (in which the prosecutor’s comment, which might have injected his personal opinion and knowledge into the case, if error, was cured by the trial court’s immediate instructions to the jury); Hammond v. State, 502 So.2d 843, 845 (Ala.Cr.App.1986), cert. denied, 482 U.S. 917, 107 S.Ct. 3193, 96 L.Ed.2d 681 (1987) (in which the prosecutor’s comment, identifying the defendant by another name, although improper, was cured by the trial court’s instructions to the jury). Thus, we find no violation of the appellant’s right to due process.
AFFIRMED.
All Judges concur except BOWEN, J., who concurs in result only without opinion.